IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action 14-cv-01059-MSK-MJW

NATHAN YBANEZ,

Plaintiff,

v.

BERNADETTE SCOTT, in her individual and official capacities as Lieutenant of the SCF mail room, and
UNKNOWN SCF MAIL ROOM EMPLOYEE "C. Mathis", in her individual capacity,

Defendants.

# REPORT AND RECOMMENDATION
on

# DEFENDANTS' MOTION TO DISMISS
(Docket No. 29)

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

  Chief Judge Marcia S. Krieger referred Defendants' motion to dismiss to the undersigned under 28 U.S.C. § 636(b). (Docket Nos. 29, 36, 38.) The Court has carefully reviewed Defendants' motion and Plaintiff's response, taken judicial notice of the court's file, and considered the applicable Federal Rules of Civil Procedure, statutes, and case law. The Court now being fully informed makes the following findings of fact, conclusions of law, and recommendation.

  Plaintiff's Complaint alleges that Defendants impermissibly interfered with his First Amendment right to send and receive mail while incarcerated. *See Thornburgh v. Abbott*, 490 U.S. 401 (1989). Because the Complaint does not plausibly allege an

unconstitutional policy, Plaintiff does not state a claim upon which relief can be granted. The Court recommends the Complaint be dismissed.

## Ybanez's Complaint

Plaintiff Nathan Ybanez is serving life without the possibility of parole at the Sterling Correctional Facility, for a crime he committed as a juvenile. He alleges as follows.

A friend of Ybanez's in South Africa mailed him a package containing (1) a personal letter, and (2) a transcript of oral argument in the U.S. Supreme Court for *Miller v. Alabama*, a case considering the constitutionality of life-without-parole sentences for crimes committed as a juvenile. Defendant Mathis, an officer working in the prison mailroom, rejected the package—erroneously applying an administrative regulation that prohibits prisoners from possessing legal papers relating to other inmates' cases. This error was caused by an informal policy within the mailroom "censoring any mail that contained the name of any prisoner other than the receiver of the mail."

The package was returned to sender, although the sender has never received it. Defendant Scott, the mailroom's primary supervising officer, offered to reimburse postage both ways if the friend in South Africa re-sent the material within two weeks; Ybanez did not receive notice of that offer until after the deadline had passed, however. Later, Defendant Scott stated that her office had retained a copy of the *Miller* transcript. She has not turned any copy over to Ybanez.

Ybanez has exhausted the Colorado Department of Corrections' administrative grievance system, asking for either better training in the mailroom or a formal regulation

3

differentiating between draft legal papers belonging to other prisoners (on the one hand) and public records that happen to mention such prisoners (on the other).  In the process, almost every individual he has spoken to has conceded that the package in question should not have been censored.

Based on those allegations, Ybanez asserts one claim: that the informal policy led to the erroneous treatment of this package, and that treatment violated his First Amendment right to send and receive legal mail while incarcerated.  He asserts the claim against Defendant Mathis in her individual capacity and against Defendant Scott in both her individual and her official capacities.  He seeks compensatory damages, punitive damages, and an injunction compelling the Colorado Department of Corrections to amend its administrative regulations.

## **Analysis**

Under Rule 12(b)(6), the Court must accept the facts Ybanez alleged in the Complaint as true; further, if there are inferences that must be drawn, the Court must draw them in Ybanez's favor.  *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010).  Only factual allegations are to be accepted as true.  Allegations of legal conclusions are not included in the Court's analysis.  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).  Once the set of operative facts is established according to the foregoing rules, the Court must decide whether those facts adequately state grounds for relief.  It is not necessary for Ybanez to allege a prima facie case including every last element of his legal claims—but he must put forward enough facts for the

4

Court to infer that his claims are at least plausible. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191–92 (10th Cir. 2012).

Defendants raise a number of arguments for dismissing some or all of the Complaint. The Court will first address whether Ybanez has stated a claim upon which relief can be granted, and then, in the alternative, will address Defendants' other arguments in the order Defendants present them.

**I.      Failure to State a Claim upon which Relief Can Be Granted**

Inmates have a First Amendment right to send and receive mail, particularly legal mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Pocunier v. Martinez*, 416 U.S. 396 (1974). Prison regulations burdening that right must be "reasonably related to legitimate penological interests," as informed by the four-factor analysis of *Turner v. Safely*, 482 U.S. 78 (1987). *Thornburgh*, 490 U.S. at 413 (adopting *Turner* test). That analysis provides context to guide the reasonableness inquiry:

> First, is there a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it? Second, are there alternative means of exercising the right that remain open to prison inmates? Third, what impact will accommodation of the asserted constitutional right have on guards and other inmates, and on the allocation of prison resources generally? And, fourth, are ready alternatives for furthering the governmental interest available?

*Wardell v. Duncan*, 470 F.3d 954, 960 (10th Cir. 2006) (quoting *Beard v. Banks*, 548 U.S. 521, 529 (2006)).

Here, assuming Ybanez's allegations to be true, the prison "censor[s] any mail that contain[s] the name of any prisoner other than the receiver of the mail." (Docket No. 1, p. 5.) Ybanez seeks to limit this policy to a less-restrictive alternative: for the jail

5

to censor only *nonpublic* documents containing the names of other prisoners, letting *public* documents (like argument transcripts) through.

This is an argument based on the third and fourth *Turner* factors. But the first two *Turner* factors weigh heavily against Ybanez's claim. As to the first *Turner* factor, the challenged restriction is simply one application of another restriction, which Ybanez mentions but does not challenge: the Department of Corrections' rule prohibiting inmates from possessing each other's legal papers.[1] That restriction itself has repeatedly been affirmed by courts as rationally related to the legitimate penological interest of controlling/prohibiting the black-market or barter economy inside prisons. *See, e.g.*, *Giba v. Cook*, 232 F. Supp. 2d 1171, 1187–88 (D. Ore. 2002); *Jones-El v.*

---

[1] Administrative Regulation 750-01—housed within the Department of Corrections' Administrative Regulations, in a chapter titled "Offender Legal Services" and a Regulation titled with the Subject "Offender Legal Access," provides:

> 2. Offenders may provide assistance to one another; however, it will be regulated by time, place, and manner.
>
>   a. Payment of any type is prohibited.
>
>   b. Offenders may assist one another inside the law library and outside the law library, if permitted by facility policy; however, when legal documents are being prepared, exchanged inside or outside the law library, all involved offenders must be present. Offenders are required to return all documents to their owner before parting company.
>
>   c. Offenders are allowed to maintain only their own legal work in their personal possession or in their cells. Violations may result in disciplinary action.

Colo. Dep't of Corrs., Administrative Regulation 750-01(IV)(E)(2), *available at* http://www.doc.state.co.us/sites/default/files/ar/0750_01_040114.pdf. Subsection (c) is the specific rule at issue.

6

*Pollard*, 2010 WL 446057, at *13–15 (W.D. Wis. Feb. 2, 2010); *see also Wardell*, 470 F.3d at 959–63 (upholding policy barring gifts/mail from other inmate's visitors based on anti-bartering interest). As to the second step, it can't be disputed that the Department of Corrections has left Ybanez an adequate means of receiving his mail: he could have asked his friend in South Africa to re-send the transcript, after Defendant Scott offered to allow it through. Or, he could have asked his friend in South Africa to send the transcript to his lawyers so that they could send it to him in clearly marked legal mail. As to the personal letter that accompanied the transcript, it could simply have been mailed separately from legal documents containing the names of other prisoners. To be sure, this letter was lost—and drawing inferences in Ybanez's favor, the letter was lost as a direct result of negligence by Defendant Mathis. But isolated instances of negligence are not constitutional violations. *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir.1990); *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir.1989); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir.1997).

The first two *Turner* factors—the strong governmental interest and *de minimis* burden on Ybanez's First Amendment right to receive mail—weigh very strongly against Ybanez's claim. His Complaint can only state a claim, then, if the third and fourth factors are so strong as to "'nudge [Ybanez's] claims across the line from conceivable to plausible.'" *Khalik*, 671 F.3d at 1190 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But those factors cannot possibly do so. It might be true that the prison could adopt Ybanez's proposed rule and instruct its employees to examine legal documents more closely, to discern whether the document is a public one or a draft

7

one; it might even be true that, because the employees could get to the right answer more frequently in the first place, the prison would avoid grievances like Ybanez's and thus save time and money.[2]  But this amounts to searching for a "least restrictive alternative"—and the prison is not required to adopt the least restrictive alternative. *Turner*, 482 U.S. at 90–91.  The dispositive inquiry under *Thornburgh* and *Turner* is whether the challenged restriction is "reasonably related to legitimate penological interests," and this one is.  Accordingly, the facts as alleged by Ybanez do not amount to a First Amendment violation.  The Court therefore recommends that the Complaint be dismissed with prejudice.

**II.     Statute of Limitations**

An affirmative defense, like the statute of limitations, can be raised on a motion to dismiss if the facts showing the defense are clear on the face of the complaint. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1311 n. 3 (10th Cir. 1999), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  This action is subject to a two-year statute of limitations.  *Hunt v. Bennett*, 17 F.3d 1263, 1265–67 (10th Cir. 1994).  Although Ybanez argues to the contrary, the continuing-violation doctrine does not apply to § 1983 claims where the claimant does not continue to suffer under the allegedly unlawful deprivation.  *See Gambina v. Federal Bureau of Prisons*, Case No. 10-cv-02376-MSK-KLM, 2011 WL 4502085, at *4–5 (D. Colo. Sept.

---

[2] It's worth noting that Ybanez has had this problem before.  The alleged policy is overbroad enough that it mistakenly censored not only the *Miller* transcript in this case, but also documents from a consolidated case in this Court in which Ybanez was not the lead-docketed plaintiff. (Docket No. 1, p. 6; *see also Ybanez v. Milyard*, Case No. 10-cv-02234-WYD-CBS, 2011 WL 4383123, at *6 (D. Colo. Sept. 30, 2011).)

29, 2011); *Florez v. McCormac*, Case No. 10-cv-01628-MSK-MJW, at *3–4 (D. Colo. Aug. 3, 2011).

Ybanez received notice that his mail had been rejected on April 9, 2012 (Docket No. 1, p. 4), and that date started the limitations period. Ybanez's Complaint was stamped received and was filed by the Clerk of Court on April 14, 2014, four days after the limitations period would have expired. However, the prison mailbox rule applies to § 1983 claims in the Tenth Circuit. *Price v. Philpot*, 420 F.3d 1158, 1163–67 (10th Cir. 2005). To invoke that rule, a Complaint must allege facts establishing that it was timely placed in the prison's system for legal mail (unless there is no system exclusively for legal mail, in which case the Complaint must include a declaration or affidavit stating that it was timely placed in the regular mail system). *Id.*

The face of the Complaint does not disclose the date on which it entered the prison's mail system, or whether a legal-mail system is available at Ybanez's institution. Drawing inferences in Ybanez's favor, it is not unreasonable to think that it took four days for the Complaint to arrive. Further, in his objection to Defendants' motion, Ybanez attached evidence that he complied with the prison mailbox rule. (Docket No. 36, p.14.) Thus, should the case go forward in any fashion, the Court recommends that Ybanez be granted an opportunity to amend the Complaint to include allegations pertaining to the prison mailbox rule.

### III.     Sovereign Immunity as to Official-Capacity Claim for Money Damages

Defendants argue that Ybanez is not entitled to money damages to the extent he sues Defendants in their official capacity. In response, Ybanez conceded the point and

9

stated that he seeks money damages from Defendants only in their individual capacities. (Docket No. 36, p. 5.) The Court thus recommends that, should the case go forward in any fashion, Ybanez's concession be treated as a stipulation.

## IV.     Prison Litigation Reform Act

Defendants argue that Ybanez is not entitled to emotional or mental distress damages because he has not alleged a physical injury. In response, Ybanez argued that he does not seek emotional or mental distress damages. (Docket No. 36, p. 5–6.) The Court thus recommends that, should the case go forward in any fashion, Ybanez's concession be treated as a stipulation.

## V.      Qualified Immunity as to Individual-Capacity Claims for Money Damages

When a defendant asserts qualified immunity, the plaintiff bears a heavy two-part burden of proof. *Davis v. Scherer*, 468 U.S. 183, 197 (1984); *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001). To overcome qualified immunity, the plaintiff must show: (1) defendant violated plaintiff's federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation in the circumstances faced by the defendant. *See Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendants qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (U.S. 2011) (citing *Anderson v.*

*Creighton*, 483 U.S. 635, 640 (1987)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity applies in "all but the most exceptional cases," *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998), and protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Ybanez's constitutional right to receive mail, especially legal mail, is clearly established. *See, e.g.*, *Gee v. Pacheco*, 627 F.3d 1178, 1187–89 (10th Cir. 2010); *Wardell v. Duncan*, 470 F.3d 854 (10th Cir. 2006). On the facts as alleged, however, Defendants have not violated that right—and they are thus entitled to qualified immunity.

## **Conclusion**

For the foregoing reasons, the Court RECOMMENDS that Defendants' Motion to Dismiss (Docket No. 29) be GRANTED.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the**

11

**recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions,**

**<u>Makin v. Colo. Dep't of Corr.</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>,**

**91 F.3d 1411, 1412-13 (10th Cir. 1996)**.


Dated: October 30, 2014        */s/ Michael J. Watanabe*
      Denver, Colorado         Michael J. Watanabe
                                  United States Magistrate Judge