**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Chief Judge Marcia S. Krieger**

Civil Action No. 14-cv-01059-MSK-MJW

NATHAN YBANEZ,

      Plaintiff,

v.

BERNADETTE SCOTT, in her official capacity as Lieutenant of the SCF Mail Room;
UNKNOWN SCF MAIL ROOM EMPLOYEE "C. MATHIS," in her individual capacity,

      Defendants.

---

**OPINION AND ORDER SUSTAINING IN PART AND OVERRULING IN PART**
**OBJECTIONS TO RECOMMENDATIONS AND GRANTING IN PART AND**
**DENYING IN PART MOTION TO DISMISS**

---

**THIS MATTER** comes before the Court pursuant to Mr. Ybanez's Objections (**# 28**) to

the Magistrate Judge's July 1, 2014 Minute Order (**# 26**) denying Mr. Ybanez's Motion for

Attorney Assistance (**# 22**); Mr. Ybanez's Objections[1] (**# 42**) to the Magistrate Judge's October

14, 2014 Recommendation (**# 41**) that the claim against Defendant Mathis be dismissed without

prejudice for failure to timely serve; Mr. Ybanez's Objections (**# 53**) to the Magistrate Judge's

October 29, 2014 Minute Order (**# 51**) denying Mr. Ybanez's Motion for Leave to Amend his

Complaint (**# 47**); and Mr. Ybanez's Objections (**# 54**) to the Magistrate Judge's October 30,

2014 Recommendation (**# 52**) that the Defendants' Motion to Dismiss (**# 29**) be granted.

---

[1]     This filing appears to be a written response to the Magistrate Judge's previously-issued
Order to Show Cause (**# 35**), requiring Mr. Ybanez to show why service of process on Defendant
Mathis had not been completed.  Mr. Ybanez's filing bears a date of October 9, 2014, but was
received by the Clerk of the Court and filed on October 14, 2014, the same day that the
Magistrate Judge issued the Recommendation in issue.  Thus, the Court will treat Mr. Ybanez's
filing as Objections to the Recommendation.

## **FACTS**

Mr. Ybanez is an inmate in the custody of the Colorado Department of Corrections ("CDOC"), hosed at the Sterling Correctional Facility ("SCF").  In or about April 2012, a friend in South Africa mailed Mr. Ybanez a package consisting of a personal note and a copy of the transcript of the oral arguments before the United States Supreme Court in *Miller v. Alabama*, 132 S.Ct. 548 (2012).[2] The package was received by the SCF mail room on or about April 9, 2012, and processed by Defendant Cindy Mathis.  Ms. Mathis concluded that the transcript amounted to contraband in violation of CDOC Administrative Regulation ("AR") 750-01(IV)(E)(1)(C), which provided that "offenders are allowed to maintain <u>only their own legal work</u> in their personal possession."  (Emphasis added.)  Believing that the transcript represented "legal work" of someone other than Mr. Ybanez, Ms. Mathis directed that the entire package be returned to its sender.  (Mr. Ybanez states that the returned letter was never received by its sender.)

Mr. Ybanez filed an internal grievance over the event.  On or about May 22, 2012, Defendant Bernadette Scott, supervisor of the SCF mail room staff, responded to the grievance, noting that she was unable to assess the propriety of Ms. Mathis' decision because the package had been returned to the sender.[3]   Ms. Scott stated that if Mr. Ybanez would contact the sender and arrange to have her re-send the package to the SCF mail room by June 6, 2012, Ms. Scott would examine the transcript and, if necessary, reconsider the matter.  Mr. Ybanez states that he

---

[2]      The *Miller* case, which concerned the constitutionality of imposing life sentences on juvenile offenders, was of particular interest to Mr. Ybanez, who was currently challenging his own sentence on similar grounds.

[3]      Mr. Ybanez states that, in a meeting several months later, Ms. Scott told him that she had retained a copy of the transcript, but that she has yet to provide him with a copy.

did not receive a copy of Ms. Scott's response until June 13, 2012 (after the deadline had

expired) and that he could not have complied with it because it would take several weeks for him

to contact the friend in South Africa to have the package re-sent and several additional weeks for

the re-sent package to arrive.

Mr. Ybanez pursued his grievance through additional levels of review, noting a previous

instance in which he had been denied legal mail, and he requested "an administrative regulation

change that would protect me from unjust censorship."  At the Step 3 stage, CDOC's grievance

officer responded that "If the documents that were returned to the sender were in fact transcripts

and a matter of public record then you should have been allowed to receive the materials."

However the response added that "[t]his is a staff training issue" and that "no changes to [CDOC

regulations] are being considered as a result of this situation."

On April 14, 2014, Mr. Ybanez then commenced this action *pro se*.  His Complaint (**# 1**)

alleges a claim under 42 U.S.C. § 1983 against both Ms. Scott and Ms. Mathis for deprivation of

his "right to receive mail."  He requested an injunction requiring CDOC to implement new

regulations, compensatory damages, and punitive damages against Ms. Scott "for willfully and

wantonly refusing to deliver a copy" of the transcript upon learning it should not have been

rejected.

The Defendants moved (**# 29**) to dismiss Mr. Ybanez's claims, arguing: (i) Mr. Ybanez's

action was barred by the two-year statute of limitations; (ii) Mr. Ybanez's claim for monetary

against Ms. Scott in her "official capacity" is barred by 11th Amendment immunity; (iii) any

claims for compensatory damages by Mr. Ybanez are barred under the Prisoner Litigation

Reform Act ("PLRA"), 42 U.S.C. § 1997e(e) because Mr. Ybanez failed to sustain any physical

injury; (iv) as to Mr. Ybanez's substantive claim, Mr. Ybanez failed to allege "facts

demonstrating that Defendants lacked any penological interests in inspecting and censoring Plaintiff's mail"; and (v) that the Defendants are entitled to qualified immunity.

The Court referred the Motion to Dismiss to the Magistrate Judge for a recommendation. On October 30, 2014, the Magistrate Judge recommended (# 52) that the motion be granted. Specifically, the Magistrate Judge found that: (i) inmates possess a First Amendment right to send and receive mail; (ii) restrictions on the receipt of mail must satisfy the standards of *Turner v. Safley*, 482 U.S. 78 (1987), which requires the Court to consider whether there is a rational connection between the policy and legitimate prison interests, whether there are alternative means of exercising the right that remain open to the inmate, what impacts accommodation of the asserted right will have on prison resources, and whether ready alternatives for furthering the prison interest are available; (iii) that CDOC's policy prohibiting inmates from possessing legal materials relating to other inmates satisfied the first two *Turner* factors, and that the other two factors were insufficient to grant Mr. Ybanez a colorable First Amendment claim; (iv) that although it appears that the personal note from Mr. Ybanez's friend was incorrectly rejected and subsequently lost, this was the result of an isolated instance of negligence insufficient to amount to a constitutional violation; (v) that there is a basis to believe that Mr. Ybanez could allege facts sufficient to show that his claim complied with the statute of limitations; (vi) that Mr. Ybanez had withdrawn any claims for compensatory damages; and (vii) that the Defendants would not be entitled to qualified immunity if the First Amendment claim were to proceed.

Mr. Ybanez filed timely Objections (# 54) to the Recommendation, arguing: (i) the Magistrate Judge "departed from his role as neutral arbiter" and considered arguments that the Defendants had not raised; (ii) the Magistrate Judge mistakenly analyzed the propriety of the Administrative Regulation under the *Turner* factors, rather than Mr. Ybanez's contention that the

4

conduct at issue here was the failure to properly apply the terms of that regulation; (iii) the

Magistrate Judge erroneously concluded that a single instance of censoring (and arguably

destroying) mail cannot constitute a constitutional violation; (iv) that the Magistrate Judge

misapplied the *Turner* standard, insofar as the Defendants failed to comply with CDOC's own

regulations; (v) that although the Magistrate Judge found that Mr. Ybanez's claim might be

timely by operation of the prison mailbox rule, the Magistrate Judge erred in not adopting Mr.

Ybanez's alternative argument that this claim is subject to a continually-accruing limitations

period; (vi) the Magistrate Judge erred in failing to address Mr. Ybanez's "important arguments .

. . that [his] claims for damages other than 'emotional and mental distress' should proceed"; and

(vii) the Magistrate Judge should have granted him leave to amend his Complaint to cure any

pleading deficiency.

In addition, Mr. Ybanez objects to certain procedural rulings made by the Magistrate

Judge at various stages of this action.  The Court will address the specific details of those matters

in its analysis.

## ANALYSIS

### A.  Standard of review

In considering Mr. Ybanez's filings, the Court is mindful of his *pro se* status, and

accordingly, reads his pleadings liberally.  *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

However, such liberal construction is intended merely to overlook technical formatting errors

and other defects in his use of legal terminology and proper English.  *Hall v. Bellmon*, 935 F.2d

1106, 1110 (10th Cir. 1991).  *Pro se* status does not relieve Mr. Ybanez of the duty to comply

with the various rules and procedures governing litigants and counsel or the requirements of the

substantive law, and in these regards, the Court will treat him according to the same standard as

counsel licensed to practice law before the bar of this Court.  *See McNeil v. U.S.*, 508 U.S. 106,

113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

 With regard to recommendations on dispositive motions, the Court reviews the objected-

to portions of a Recommendation *de novo*.  Fed. R. Civ. P. 72(b).  Rulings on non-dispositive

issues by a Magistrate Judge are reviewed by this Court pursuant to Fed. R. Civ. P. 72(a), and

will be reversed only if they are "clearly erroneous or contrary to law."  28 U.S.C. §

636(b)(1)(A); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *Ariza v. U.S. West*

*Communications, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996).  Accordingly, Mr. Ybanez's

Objections to the Magistrate Judge's non-dispositive rulings will be overruled unless the Court

finds that the Magistrate Judge abused his discretion or, if after viewing the record as a whole,

the Court is left with a "definite and firm conviction that a mistake has been made." *Ariza,* 167

F.R.D. at 133, *citing Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1464 (10th Cir.1988).

 With regard to the Defendants' motion to dismiss Mr. Ybanez's claim under Fed. R. Civ.

P. 12(b)(6), when reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must

accept all well-plead allegations in the Complaint as true and view those allegations in the light

most favorable to the nonmoving party.  *Stidham v. Peace Officer Standards and Training*, 265

F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173

F.3d 1226, 1236 (10th Cir. 1999).  The Court must limit its consideration to the four corners of

the Amended Complaint, any documents attached thereto, and any external documents that are

referenced in the Amended Complaint and whose accuracy is not in dispute.  *Oxendine v.*

*Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941

(10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).  A

claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face."

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  To make such an assessment, the Court first

discards those averments in the Complaint that are merely legal conclusions or "threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id.* at

1949-50.  The Court takes the remaining, well-pled factual contentions, treats them as true, and

ascertains whether those facts (coupled, of course, with the law establishing the requisite

elements of the claim) support a claim that is "plausible" or whether the claim being asserted is

merely "conceivable" or "possible" under the facts alleged.  *Id.* at 1950-51.  What is required to

reach the level of "plausibility" varies from context to context, but generally, allegations that are

"so general that they encompass a wide swath of conduct, much of it innocent," will not be

sufficient.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

**B.  First Amendment claim**

It is readily apparent that inmates enjoy a First Amendment right to send and receive non-

legal mail.  *Procunier v. Martinez*, 416 U.S. 396, 408-09 (1974), *overruled on other grounds,*

*Thornburgh v. Abbott*, 490 U.S. 401 (1989).  That right, of course, may be restricted by prison

officials where legitimate interests of security are implicated, and courts analyze the

permissibility of such restrictions under the *Turner* test.  *Thornburgh*, 490 U.S. at 407.  And, for

the reasons stated by the Magistrate Judge, this Court has little doubt that the security

implications of AR 750-01's restriction on inmates' receipt of legal materials bearing the name

of another inmate would satisfy the *Turner* standard.

But this Court does not understand Mr. Ybanez to dispute any of those propositions.  The

Court does not read Mr. Ybanez's Complaint as arguing that AR 750-01's ban on inmates

obtaining legal materials of another inmate itself violates the First Amendment; rather, the Court

understands Mr. Ybanez to complain that the Defendants <u>failed to properly apply</u> that regulation.

Put differently, Mr. Ybanez acknowledges that AR 750-01 prevents him from obtaining "legal work" of another offender, but he complains that Ms. Scott promoted an overbroad reading of that regulation, believing it to require "censoring any mail that contained the name of any prisoner other than the receiver of the mail," even when the mail "contained copies of public records . . . from court cases other than the offender's."   He contends that, as a result of Ms. Scott's overly-broad reading of AR 750-01, Ms. Mathis "was not trained properly," resulting in the situation in which Ms. Mathis rejected the oral argument transcript sent to Mr. Ybanez.

Construing Mr. Ybanez's claim as such, the Defendants' Motion to Dismiss fails to precisely address that claim.  The Defendants' brief argument on the merits in their motion raises three particular points: (i) that "the inspection of the letter and the materials sent [to Mr. Ybanez] did not violate [his] rights" because it was not marked as privileged legal mail; (ii) that the court should not find "an entitlement to confidentiality of non-privileged inmate mail," as the prison's security interests would overcome it in any event; and (iii) "even if [Mr. Ybanez] had some sort of right [of confidentiality] with respect to his mail, the screening [and seizure] of his mail was 'reasonably related to valid penological goals of security and safety."

It is apparent that these arguments, valid as they may be, do not squarely meet Mr. Ybanez's claim – Mr. Ybanez does not dispute that prison officials had a right to inspect the package addressed to him, nor he does not claim any blanket entitlement of "confidentiality of non-privileged inmate mail." The third argument begins to approach Mr. Ybanez's claim – a fair reading of that argument might be that the Defendants are contending that certain "security and safety" interests might have justified seizing the oral argument transcript – but the argument is not meaningfully developed beyond the sentence quoted above and, in any event, CDOC's Step

3 grievance response appears to concede that the Defendants were not contending that the oral

argument transcript was withheld mistakenly, rather than due to any actual security concerns.

The Court is constrained to address only the arguments specifically raised by the

Defendants, and because those arguments failed to address the actual substance of Mr. Ybanez's

claim, the Court agrees with Mr. Ybanez that the Magistrate Judge erred in finding merit in those

arguments and recommending dismissal.

This is not to say that the Court is sanguine that Mr. Ybanez's claim will eventually

prove successful.  Courts have frequently recognized that a single, isolated instance of inmate

mail being negligently lost, destroyed, or rejected is insufficient to amount to a constitutional

violation.  *Nixon v. Secretary, Pennsylvania Dept. of Corrections*, 501 Fed.Appx. 176, 178 (3d

Cir. 2012); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *see also Peterson v. Lampert* 499

Fed.Appx. 782, 785 (10th Cir. 2012) (negligent loss by prison officials of inmate's religious

materials during transfer constituted "an isolated act of negligence would not violate an inmate's

First Amendment right" to free exercise of religion).  Instead, they require the inmate to show

that prison officials "regularly and unjustifiably interfered with the incoming [ ] mail." *Davis*,

320 F.3d at 351.  Moreover, courts generally require something more than negligence on the part

of a governmental official before a constitutional claim will arise.  *See Jones v. Salt Lake

County*, 503 F.3d 1147, 1162-63 (10th Cir. 2007) ("The fact certain editions of Prison Legal

News were not delivered to Thomas and other inmates was the result of human error [by prison

staff] . . . Such negligence does not state a § 1983 claim. Liability under § 1983 must be

predicated upon a <u>deliberate</u> deprivation of constitutional rights by the defendant, and not on

negligence") (citation omitted, emphasis in original).

The Magistrate Judge noted as much, finding that the rejection (and subsequent loss) of the personal note to Mr. Ybanez (but not the transcript) would be an "isolated instance[ ] of negligence" that could not amount to a constitutional deprivation. *Docket # 52* at 6. But again, the Defendants' motion did not raise the argument that a single instance of negligent application of AR 750-01 could not state a claim, and thus, it was inappropriate for the Magistrate Judge to reach that question.[4]

Accordingly, this Court denies the Defendants' Motion to Dismiss Mr. Ybanez's claim, at least on the grounds asserted in that motion. Whether that claim can survive a motion for summary judgment remains to be seen.

**C. Remaining contentions**

Because the Court does not dismiss Mr. Ybanez's claim outright, it is necessary for the Court to reach the remaining issues, both with regard to the alternative recommendations by the Magistrate Judge regarding the Motion to Dismiss and Mr. Ybanez's Objections to other rulings by the Magistrate Judge.

1. Statute of limitations

The Magistrate Judge found that, facially, Mr. Ybanez's claim was untimely. He was notified of the rejection of the package on April 9, 2012, thus causing the claim to accrue on that date. This suit was filed with the Court on April 14, 2014, a few days after the two-year statute of limitations had expired. However, the Magistrate Judge found that Mr. Ybanez might arguably be able to avail himself of an earlier filing date by operation of the "prison mailbox rule" and recommended that Mr. Ybanez be granted an opportunity to amend his Complaint to

---

[4]     It may be that, had that issue been squarely raised by the Defendants' motion, Mr. Ybanez would have responded with caselaw that he believed stood for the opposite proposition (as he does in his Objections) or might have presented a factual argument disputing whether the improper rejection of the package was an "isolated" incident. *See Docket # 52* at n. 2.

allege facts showing the application of that rule.  *Citing Price v. Philpot*, 420 F.3d 1158, 1163-67 (10th Cir. 2005).

Mr. Ybanez objects to this finding, arguing that other doctrines render his case timely, regardless of whether the prison mailbox rule applies.  He contends that Ms. Scott's January 30, 2013 acknowledgement of having retained a copy of the transcript constitutes a separate constitutional violation, giving rise to a separate statute of limitations for a claim against Ms. Scott.

The Court disagrees. The constitutional violation in Mr. Ybanez's complaint is the rejection of mail sent to him in April 2012.  The fact that Ms. Scott might have kept a copy of some portion of the rejected mail for evidentiary or other purposes, and subsequently refused to provide it to him, does not constitute a separate constitutional violation.  Mr. Ybanez also argues that the loss of the mail constitutes a "continuing violation" for each day he remains dispossessed of the package.  Even assuming that the general applicability of the "continuing violation" doctrine remains unsettled in the 10th Circuit, it is clear that alleged violations consisting of discrete acts – such as the rejection of mail – do not warrant the invocation of that doctrine.  *See Fogle v. Slack*, 419 Fed.Appx. 860, 864-65 (10th Cir. 2011).

Accordingly, the Court overrules Mr. Ybanez's Objections on this issue and, consistent with the Recommendation, grants him leave to amend his Complaint to attempt to demonstrate the timeliness of this action via application of the prison mailbox rule.

2.  Service upon Ms. Mathis

On August 26, 2014, the Magistrate Judge entered a *sua sponte* Order to Show Cause (**#35**), finding that, as of that date, Mr. Ybanez "has not served Defendant UNKNOWN SCF MAIL ROOM EMPLOYEE C. MATHIS."  Citing Fed. R. Civ. P. 4(m)'s requirement that,

absent a showing of good cause, service be effected within 120 of filing the Complaint, the Magistrate Judge directed that Mr. Ybanez "appear by telephone" at a hearing on October 14, 2014 and "provide proof of service" for Defendant Mathis or show cause why the claim against Ms. Mathis should not be dismissed pursuant to Rule 4(m). The minutes from the October 14, 2014 hearing state: "The Court raises the Order to Show Cause for discussion. Defendant identified as Unknown SCF Mail Room Employee 'C. Mathis' in her individual capacity has not been properly identified." [5]

The Magistrate Judge subsequently issued a Recommendation (**# 41**) on October 14, 2014. It noted that Mr. Ybanez was asked at hearings on June 8, 2014 and August 26, 2014 about his failure to serve Ms. Mathis; that the Magistrate Judge had issued the Order to Show Cause; and that at the October 14, 2014 hearing, Mr. Ybanez again "provided no proof of service and did not establish good cause for his failure to serve Candy Mathis." Thus, the Magistrate Judge found that "Candy Mathis has not been served with process in this case," and that, by operation of Rule 4(m), the claims against her should be dismissed. Mr. Ybanez subsequently filed Objections (**# 49**) to that Recommendation.

The Court need not delve into Mr. Ybanez's Objections because it finds that the Magistrate Judge's Recommendation was unwarranted. Indeed, the record reflects two distinct bases for concluding finding service upon Ms. Mathis to be sufficient.

First, there is evidence that Ms. Mathis waived service. Counsel for the Defendants entered an appearance on both Ms. Scott and Ms. Mathis' behalf on June 5, 2014 (**# 14**), without purporting to reserve any objections for Ms. Mathis. More importantly, in a June 18, 2014

---

[5]        The Recommendation subsequently issued does note that Ms. Mathis' actual identity was established in a tendered Amended Complaint Mr. Ybanez filed on October 8, 2014. The Court thus understands that the Magistrate Judge was not recommending dismissal because of the failure to properly <u>identify</u> Ms. Mathis, but simple because of the alleged failure to <u>serve</u> her.

motion (**# 17**), the Defendants stated that "On April 24, 2014, a waiver of service was accepted on behalf of Defendants Scott and Mathis [ECF No. 9]."   (There appears to be some confusion on this point -- the waiver in question is actually Docket # 11; it is dated April 28, 2014, not April 24; and, perhaps due to a clerical error, it reflects that service was being waived for "Ida Mathias-McSchooler," rather than "Candy Mathis."   Nevertheless, the record is sufficiently clear that the Defendants intended to waive service for Ms. Mathis and long-believed that such service had been waived.[6])   The Defendants made the identical representation a second time, in a motion (**# 21**) filed on June 27, 2014.

Second, insufficiency of service of process is a defense contemplated by Fed. R. Civ. P. 12(b)(5).  By operation of Rule 12(h)(1), a party waives a defense of insufficient process by failing to raise it in the party's Rule 12 motion.  *Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174-75 (10th Cir. 1992).  The Defendants – including Ms. Mathis – filed a Rule 12 motion (**# 29**) on August 6, 2014, but did not raise insufficiency of service upon Ms. Mathis, thus waiving any complaint as to insufficiency of service.  Such a waiver operates to excuse any noncompliance by a plaintiff with the requirements of Rule 4(m).  *See e.g. Ahern v. Neve*, 285 F.Supp.2d 317, 320-21 (E.D.N.Y. 2003).

By the time of the August 2014 Order to Show Cause and the October 2014 Recommendation, there was ample evidence in the record that Ms. Mathis had waived any objections she might have had any failure of Mr. Ybanez to effect service upon her.

---

[6]     The undersigned has not been presented with a transcript of any of the hearings before the Magistrate Judge in which the issue of service upon Ms. Mathis was discussed, and thus, the position that Ms. Mathis' counsel took on the question is unknown.  The Court hopes that, befitting her status as an officer of the court, Ms. Mathis' counsel attempted to assure the Magistrate Judge that Ms. Mathis has previously taken the position that service upon her had been waived, and did not through silence allow the Magistrate Judge to misunderstand her position.

Accordingly, the Court declines to adopt the Recommendation that the claims against Ms. Mathis be dismissed on Rule 4(m) grounds.

### 3. Availability of damages

The Defendants raised two issues regarding Mr. Ybanez's claims for monetary damages: that claims against Ms. Scott in her official capacity are barred by 11th Amendment immunity and that Mr. Ybanez's claims for compensatory damages are barred by the PLRA.   The Magistrate Judge construed certain arguments made by Mr. Ybanez in response to be concessions that he was not seeking such damages.  In his Objections, Mr. Ybanez appears to argue that he was not necessarily conceding such damages and that the Court should consider his arguments that such damages are available.

As to the issue of damages against Ms. Scott in her official capacity, Mr. Ybanez's response to the Motion to Dismiss conceded that he was only seeking injunctive relief, not damages, against Ms. Scott in her official capacity.  He stated that he intended  to seek damages against Ms. Scott in her individual capacity.  The Magistrate Judge did not misconstrue this argument, and thus, the Court finds that Mr. Ybanez has conceded that he is not entitled to damages on his claim against Ms. Scott in her official capacity.

As to his claim for compensatory damages, the Defendants argued that Mr. Ybanez was barred from such recovery by the PLRA, as he did not contend that he had sustained any physical injury as a result of the constitutional violation.  42 U.S.C. § 1997e(e) provides that "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

14

Mr. Ybanez raised several arguments in response.  He argues that the PLRA's physical injury requirement "is unconstitutional as applied to First Amendment claims." This argument was squarely rejected by the 10th Circuit in *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001).  That case concluded that the PLRA's limitation on recovery for non-physical injuries applies even when constitutional rights (including First Amendment rights) are at issue, explaining that "the Constitution does not demand an individually effective remedy for every constitutional violation."

Mr. Ybanez also argues that the PLRA "does not apply to claims for loss of property." This is a more debatable proposition. Some courts have held as much.  *E.g. Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002) ("We also do not perceive any basis in Section 1997e(e) for barring an award of compensatory damages for the loss of Thompson's property provided he can establish actual injury").  The 10th Circuit does not appear to have squarely addressed this issue, but in *Allen v. Reynolds*, 475 Fed.Appx. 280, 283-84 (10th Cir. 2012), the court appeared to reject, in *dicta*, an argument that an inmate's demand for compensatory damages for the destruction of personal photographs survived the lack of a physical injury under the PLRA.

The issue is, however, of somewhat doubtful application here, as neither of the items of property cited by Mr. Ybanez – a personal note written to him and a printout of a freely-available public record – would appear to have any intrinsic economic value.  Presumably, the personal note would have a value only to Mr. Ybanez, and only in the sense that his enjoyment of its contents would foster a closer relationship with the sender.  Thus, the loss of that letter would appear to result only in mental or emotional injuries to Mr. Ybanez (which are unambiguously not compensable), not a loss of any economic value that its possession would have conferred upon him (*e.g.* because the letter was written on valuable paper, or because it contained drawings

or writings of a celebrated artist such that its contents would be of economic value to a third-party).   Similarly, the printout of a freely-available public record would have no economic value beyond its emotional value to Mr. Ybanez because of his particular circumstances, as that document is readily reproducible by anyone who wishes to possess it.   Thus, although the Court has some doubt that Mr. Ybanez will eventually be able to show facts sufficient to entitle him to an award of compensatory damages for loss of the tangible property, given the absence of clear authority from the 10th Circuit foreclosing the availability of such damages and the weight of authority in other circuits permitting it, the Court will defer the question of whether Mr. Ybanez can recover such damages until a later time.

Mr. Ybanez argues that the PLRA does not prevent him from recovering punitive damages against the Defendants.  *Searles* recognizes this point: "We believe that the salient fact is that Congress simply did not choose to provide a restriction on punitive damages."  251 F.3d at 881.  Thus, Mr. Ybanez may request an award of punitive damages against the Defendants (assuming he demonstrates sufficient proof of a predicate for such damages).

### 4. Attorney assistance

On June 27, 2014, Mr. Ybanez filed a "Motion for Attorney Assistance in Conducting Oral Depositions" (**# 22**).  That motion explained that an attorney from the Colorado Prison Law Project had offered to assist Mr. Ybanez in conducting depositions in this case, but that the attorney was not willing to make a full entry of appearance.  Mr. Ybanez noted that this Court's Administrative Order 2007-6 prohibited limited representation by counsel, but he argued that the Court should waive that prohibition in this case because the harm sought to be prevented (which Mr. Ybanez argued was limited to "ghost writing") was not present here.

The Magistrate Judge denied (# 26) the motion, finding that "nothing in AO 2007-06 limits its applicability to ghostwriting" and that the prohibition against limited appearances did not pose any constitutional concerns.  Mr. Ybanez filed timely Objections (# 28), although those Objections merely restated Mr. Ybanez's position without offering any new argument or analysis.

Because the Magistrate Judge's ruling concerned a non-dispositive issue, the Court reviews it under the highly-deferential "clearly erroneous or contrary to law" standard.  Fed. R. Civ. P. 72(a).  This Court finds no clear error or disregard of controlling law.  Indeed, Mr. Ybanez's motion and objections both concede that the question of whether to permit a limited appearance of counsel is confined to the discretion of the Magistrate Judge.  This Court cannot say that the Magistrate Judge's conclusion that a limited appearance of the type contemplated by Mr. Ybanez is within the intended reach of Administrative Order 2007-6 is an abuse of that discretion.  Accordingly, Mr. Ybanez's Objections are overruled.

> 5. <u>Leave to amend</u>

Finally, Mr. Ybanez has filed Objections (# 53) to a Minute Order (# 51) by the Magistrate Judge denying Mr. Ybanez's Motion for Leave to Amend (# 47).  The proposed amendment sought largely to correct the caption of the case to specifically name Ms. Mathis. The Magistrate Judge denied the motion solely on the grounds that the recommendation that the claims against Ms. Mathis be dismissed for failure to serve, and that, should this Court decline to adopt that recommendation, "Plaintiff may re-file his motion for leave to amend the complaint."

Because the Court has declined to dismiss the claims against Ms. Mathis, and indeed, has granted Mr. Ybanez leave to amend his complaint in other respects, both the Magistrate Judge's Minute Order and Mr. Ybanez's Objections to it have been rendered moot.  In the course of

amending his Complaint consistent with this Order, Mr. Ybanez may also properly amend the caption to specifically name Ms. Mathis.

**CONCLUSION**

For the foregoing reasons, Mr. Ybanez's Objections **(# 28)** are **OVERRULED** and the Court **AFFIRMS** the Magistrate Judge's July 1, 2014 Minute Order **(# 26)** denying Mr. Ybanez's Motion for Attorney Assistance.  Mr. Ybanez's Objections **(# 42)** are **SUSTAINED** and the Court **DECLINES TO ADOPT** the Magistrate Judge's October 14, 2014 Recommendation **(# 41)** that the claim against Defendant Mathis be dismissed without prejudice for failure to timely serve.  Mr. Ybanez's Objections **(# 53)** are **DENIED AS MOOT** as to the Magistrate Judge's October 29, 2014 Minute Order **(# 51)** denying Mr. Ybanez's Motion for Leave to Amend his Complaint **(# 47)**.  Mr. Ybanez's Objections **(# 54)** are **SUSTAINED IN PART AND OVERRULED IN PART** and the Court **ADOPTS IN PART AND DECLINES IN PART** the Magistrate Judge's October 30, 2014 Recommendation **(# 52)**.  The Defendants' Motion to Dismiss **(# 29)** in **GRANTED IN PART AND DENIED IN PART** as set forth herein.  Within 30 days of this Order, Mr. Ybanez may file an Amended Complaint that: (i) substitutes Candy Mathis for Defendant "Unknown SCF Mail Room Employee C. Mathis" and (ii) alleges facts sufficient to show that this action is timely under the prison mailbox rule.

Dated this 17th day of March, 2015.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge